<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN MCDONNELL, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | Civil Action No. 03-1999 |
| v. | : | |
| | : | |
| ENGINE DISTRIBUTORS, INC., | : | **OPINION** |
| | : | |
|     Defendant. | : | |

**Appearances:**

    Mark Cimino, Esq.
    1045 Cooper Street
    Deptford, NJ 08096
        Attorney for Plaintiff

    Allen A. Etish, Esq.
    Douglas Diaz, Esq.
    Archer & Greiner
    One Centennial Square
    P.O. Box 3000
    Haddonfield, NJ 08033-0968
        Attorney for Defendant

**Rodriguez, Senior District Judge:**

    This matter has come before the Court on Defendant Engine Distributors, Inc.'s ("EDI") Motion for Reconsideration of this Court's Opinion and Order dated September 26, 2005, denying summary judgment as to Count One of the Complaint. For the reasons discussed below, Defendant's Motion for Reconsideration is denied.

**DISCUSSION**

**A. Motion for Reconsideration Standard**

In order to succeed on a motion for reconsideration, the moving party must actually present "something new or something overlooked by the court in rendering the earlier decision." Khair v. Campbell Soup Co., 893 F. Supp. 316, 337 (D.N.J. 1995) (citing Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)).  The petitioner should show "more than a disagreement" with the decision she would like reconsidered, Anders v. FPA Corp., 164 F.R.D. 383, 387 (D.N.J. 1995), and a "mere recapitulation of the cases and arguments considered by this Court before rendering the initial decision" does not warrant a grant of reconsideration, Carteret Sav. Bank F.A. v. Shushan, 721 F. Supp. 705, 706 (D.N.J. 1986), mod. 919 F. 2d. 225 (3d Cir. 1990).  Finally, motions for reconsideration are sparingly granted.  Maldonado v. Lucca, 636 F. Supp. 621, 630 (D.N.J. 1986).

**B.  Analysis**

EDI argues that three factual errors and one legal error require this Court to reconsider its decision of September 26, 2005.  Specifically, EDI argues that this Court erred by categorizing Plaintiff John McDonnell's ("McDonnell") commission rate increase as a commission increase; by noting that the commission increase occurred during the period of time when EDI was dissatisfied with McDonnell's performance; by overlooking the motivation for increasing the commission rate; and by analogizing the facts of this case to those of Brewer.  These exceptions will be taken ad seriatim.

First, EDI argues that this Court incorrectly equated McDonnell's January 1, 2001 increase in commission rate to an increase in commission, or salary.  EDI argues that "there was

never an increase in McDonnell's commission but rather an increase in the commission <u>rate</u>." (Def. Br., p. 3) (emphasis in original). However, EDI's contention defies both logic and the record before the Court. As an initial matter, it is difficult to accept the suggestion that an increase in the rate of commission does not result in an increase of commission compensation. Moreover, the commission summary provided by EDI in support of its Motion for Summary Judgment reflects that McDonnell's commission went from $63,960.67 in 2000 to $76,125.16 in 2001, while his sales went from $2,900,091.00 in 2000 to $1,522,503.00 in 2001. (Def. Br. (Motion for Summary Judgment), Exh. E.) This difference correlates directly to the increase in commission <u>rate</u>. Because $76,125.16 is a larger number than $63,960.67, it is fair to say that both McDonnell's commission, or salary, and his commission rate, increased. Therefore, EDI's argument on this point is without merit.

Second, EDI argues that the increase did not occur during the time that it was dissatisfied with McDonnell's performance; "[t]o the contrary, the rate increase occurred on January 1, 2001, that is, at the very beginning of 2001. EDI's dissatisfaction, however, was based on McDonnell's sales for <u>the year 2001</u> and for <u>the year 2002</u>. Consequently, as of January 1, 2001, when the commission rate was increased, EDI would not even have (sic) known what McDonnell's total sales numbers for the year 2001 were because the year had just commenced." (Def. Br., p. 3) (emphasis in original) (internal citations omitted). However, EDI's contention once again is not supported by the record before the Court. In EDI's Brief in Support of Summary Judgment, it stated that among the "Undisputed Facts" was the company's president's dissatisfaction with McDonnell's efforts to acquire large customer accounts in 1999. (Def. Br. (Motion for Summary Judgment), p. 2.) EDI, further noting its dissatisfaction with McDonnell's

ability to increase his sales, stated that "[n]otwithstanding the expanded sales territory, McDonnell's sales stagnated in 1999 and 2000 . . . while the Company's gross profits, by contrast, increased." Id. at 3.  Both of these "Undisputed Facts" provide evidence that EDI's dissatisfaction with McDonnell's sales performance predated his commission rate increase.[1] Moreover, the Defendant argues, in support of its third contention, that Plaintiff wanted the January 1, 2001 raise because of his declining sales.  Therefore, EDI's argument that the rate increase occurred before its dissatisfaction with McDonnell's performance is contradicted by the record.

      Third, EDI argues that the Court overlooked the reason for the increase in the commission.  The Court recognizes both EDI's contention that the raise was at McDonnell's request because of his declining sales and that McDonnell did not dispute this contention during the summary judgment phase.  However, a reasonable jury could find that EDI's decision to acquiesce to McDonnell's request belies its assertion that his termination was based on poor performance relating back to 1987 because an employer who is dissatisfied with an employee's performance in sales and organization is unlikely to give him an increase in pay during the time of the dissatisfaction.  See Brewer v. Quaker State Oil Refining Corp., 72 F.2d 326 (3d Cir. 1995) (holding that evidence of a bonus award could reasonably lead a fact finder to find that the employer's stated reason is unworthy of credence).  The court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter, but to

---

[1] The Court also notes that according to documents that EDI submitted in support of its Motion for Summary Judgment, EDI was dissatisfied with McDonnell's organizational performance dating back to 1987, and including 1997, for organizational matters such as sales call and expense reports.  (Def. Br. (Motion for Summary Judgment), p. 13, Exh. F,G.)

4

determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Credibility determinations are the province of the fact finder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).  Therefore, the Court finds that this issue may not be disposed of appropriately on summary judgment.

Fourth, EDI argues that this Court erred in analogizing this case to Brewer because there, the Third Circuit held that the "recent merit bonuses" were sufficient to cast doubt on the employer's proffered reasons of poor job performance.[2]  Id. at 333.  However, in context, the court said "testimony disputing the significance of the alleged problems, his twenty-three years of consistently good sales performance and recent merit bonuses cast sufficient doubt on [the defendant's] contention that [the plaintiff] was discharged because of poor job performance in areas which the company had long overlooked or tolerated."  Id. (emphasis added).  The facts in Brewer are overwhelmingly similar to this case.  In Brewer, the defendant admonished the plaintiff for performance deficiencies, including customer complaints, poor follow-up, inaccurate and incomplete paperwork, and lack of organization.  However, throughout this period, the defendant tolerated the plaintiff's deficiencies and even awarded him a bonus.  The court noted that

> it is also questionable why a company would fire the only salesperson to receive consecutive annual bonuses in response to the same organizational deficiencies that the employer had tacitly accepted for over two decades.  During the twenty-three years that [the plaintiff]

---

[2]EDI argues that because the sales bonus in Brewer was awarded three months prior to termination it is somehow different from the commission increase here, which was awarded almost twenty months prior to termination.  The Court disagrees with EDI to the extent that an increase in compensation, whether from a bonus or an increase in commission rate, is "evidence sufficient to discredit the defendant's proffered reason."  Brewer, 72 F.2d at 331 (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

> worked for [the defendant], he consistently sold a high volume of oil despite the repeated criticisms of other aspects of his job performance. It was not until late in his career that [the defendant] turned the criticisms of [the plaintiff's] performance into the basis for adverse action. A reasonable factfinder could view [the defendant's] belated reliance on these criticisms as evidence that tends to show pretext.

Id. at 332 (citing Levin v. Analysis & Technology, Inc., 960 F.2d 314, 317 (2d Cir. 1992)).

In this case, EDI did not act on its repeated criticisms of McDonnell's performance, including his failure to comply with sales call and expense report policies and his inability to adapt to the use of technological equipment in the course of his job duties. EDI began documenting its criticisms in 1987, fifteen years before McDonnell's termination. Like in Brewer, it was not until late in McDonnell's career that EDI turned its criticisms into the basis for adverse action. The Court is satisfied that there is sufficient similarity between the facts of the two cases to support the analogies this Court drew in its September 26, 2005 Opinion. Therefore, the Defendant has failed to present something new or something overlooked by the Court in rendering its September 26, 2005 Opinion and Order.

## CONCLUSION

Based the foregoing reasons, Defendant's Motion for Reconsideration [28] will be denied.

An appropriate Order will issue this date.


                                            /S/ Joseph  H. Rodriguez
                                            JOSEPH H. RODRIGUEZ, U.S.D.J.

Dated: November 4, 2005