NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN McDONNELL, | : | |
| | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | |
| | : | Civil Action No. 03-1999 |
| | : | |
| v. | : | |
| | : | |
| ENGINE DISTRIBUTORS, | : | |
| | : | **OPINION** |
| Defendant. | : | |

This matter comes before the Court on separate motions filed by Plaintiff, John McDonnell, and Defendant, Engine Distributors, Inc.  First, Defendant moves for Reconsideration [51] of the Court's January 16, 2007 Order enforcing settlement. Second, Plaintiff moves for Entry of Judgment and for Civil Contempt [52] against Defendant for its failure to comply with the same Order.  For the reasons discussed below, the Court will deny Defendant's Motion for Reconsideration.  Additionally, it will grant in part and deny in part Plaintiff's Motion for Entry of Judgment and for Civil Contempt.

## I.  BACKGROUND FACTS AND PROCEDURAL HISTORY

John McDonnell ("Plaintiff") commenced his employment with Engine Distributors, Inc. ("Defendant") in 1963 and was terminated at the age of 69 years old in August 2002.  (Pl. Compl. ¶ ¶ 1, 5, 7.)  On May 2, 2003, Plaintiff filed this suit, alleging violations of the Age Discrimination in Employment Act ("ADEA") and the New Jersey

Law Against Discrimination ("NJLAD").

Following a grant of summary judgment for Defendant on the NJLAD claim, trial on the ADEA claim was set for June 5, 2006.  After selecting a jury, the parties alerted the Court that they had reached a settlement.  The Court then verified the existence of the settlement on the Record and thereafter entered a 60 Day Order dismissing the case.  (See Settlement Tr., June 5, 2006, pp. 2-3.)

On July 18, 2006, defense co-counsel, Douglas Diaz, sent Plaintiff's counsel, Mark Cimino, a proposed memorialization of the settlement.  (See Pl. Supp. Br. (Motion for Entry of Judgment and Civil Contempt), Exh. C.)  Mr. Cimino responded on August 2, 2006 with his own proposed memorialization, which differed in several ways from Mr. Diaz's proposal.[1]  (See id., Exh. D.)

Because the parties were unable to resolve these differences within the time frame

---

[1]In fact, there are at least six differences between Defendant and Plaintiff's proposed memorializations.  First, Plaintiff's memorialization contained a mutual, rather than a unilateral, release of claims.  (Compare Pl. Supp. Br. (Motion for Entry of Judgment and Civil Contempt), Exh. D, ¶¶ 2.a., b. with id., Exh. C, ¶ 2.)  Second, Plaintiff's proposal contained a $150 per day liquidated damages clause triggered by nonpayment of settlement proceeds.  (See id., Exh. D, ¶ 3.c.).  Third, Plaintiff deleted language to the effect that Defendant would withhold income and/or payroll taxes from settlement proceeds before remitting them to Plaintiff.  (Compare id., Exh. D, ¶ 3.b. with id., Exh. C, ¶ 3.b.)  Fourth, Plaintiff deleted language whereby his counsel would have been potentially responsible for any tax deficiencies stemming from non-payment or underpayment of employment taxes owed on settlement proceeds.  (Compare id., Exh. D, ¶ 4 with id., Exh. C, ¶ 4.)  Fifth, Plaintiff deleted a provision by which he and/or his counsel would have indemnified Defendant against costs and claims associated with a potential tax deficiency case.  (Compare id., Exh. D, ¶ 4 with id., Exh. C, ¶ 4.)  Sixth, Plaintiff's memorialization modified the confidentiality clause to apply to both parties rather than to Plaintiff only.  (Compare id., Exh. D, ¶ 10 with id., Exh. C, ¶ 10.)

Case 1:03-cv-01999-JHR-AMD   Document 74   Filed 09/24/07   Page 3 of 25 PageID: 1132

originally contemplated, the Court then extended its Order of Dismissal to October 10, 2006. Nonetheless, the parties again stalemated in their discussions over memorialization of the settlement. As a consequence, Plaintiff did not receive any settlement proceeds. Thus, on October 6, 2006, Plaintiff filed a Motion to Enforce the Settlement. Defendant opposed the Motion and argued that it called for enforcement of terms to which it never agreed, namely those terms added by Mr. Cimino in his proposed memorialization. (See Def. Br. (Opposing Motion to Enforce Settlement), pp. 4-5.) Additionally, Defendant alleged that Plaintiff violated the settlement agreement's non-disclosure and non-disparagement provisions. (See id., pp. 5-6.) This, according to Defendant, justified the remedy of rescission. (See id.) The Court held a hearing on the matter on October 31, 2006. Then, on January 16, 2007, after entertaining the parties' additional arguments via a telephone conference, the Court ordered the settlement to be enforced.

Two weeks later, on January 30 2007, Defendant filed the instant Motion for Reconsideration of the January 16 Order. In support of its Motion, Defendant primarily argues that there is actually no settlement agreement to enforce because there was never a meeting of the parties' minds as to certain material terms. (See Def. Supp. Br. (Motion for Reconsideration), pp. 3-6; Def. Post Ev. Hearing Br. (Motion for Reconsideration), pp. 13-16.) Further, Defendant argues that any purported agreement is invalid because defense co-counsel, Allen Etish, lacked authority to enter into it. (See Def. Supp. Br. (Motion for Reconsideration), p. 6; Def. Post Ev. Hearing Br. (Motion for

3

Reconsideration), p. 17.)  Finally, Defendant resurrects its earlier argument that Plaintiff

breached any agreement that may have existed, thereby justifying the remedy of

rescission.  (See Def. Br. (Motion for Reconsideration), pp. 1-2.)

     One day after Defendant filed its Motion for Reconsideration, Plaintiff filed the

instant Motion for the Entry of Judgment and for Civil Contempt.  In support of his

Motion, Plaintiff argues that Defendant has persisted in its refusal to pay over settlement

proceeds.  (See Pl. Br. (Motion for Entry of Judgment and Civil Contempt), p. 3.)  This,

according to Plaintiff, breaches the settlement agreement and flouts the Court's January

16 Order.  (Id.)  Plaintiff therefore concludes that the Court should not only enter

judgment in the full amount of the settlement, but also hold Defendant in civil contempt.

(Id.)

## II.  DISCUSSION

### A. Defendant's Motion for Reconsideration

#### 1.  Motion for Reconsideration Standard

     "The purpose of a motion for reconsideration is to correct manifest errors of law or

fact or to present newly discovered evidence."  Harsco Corp. v. Zlotnicki, 779 F.2d 906,

909 (3d Cir. 1985).  It must be stressed, however, that reconsideration is "an

extraordinary remedy" and is granted "sparingly."   NL Indus., Inc. v. Commercial Union

Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996).

     To succeed on a motion for reconsideration, the moving party must show "more

4

than a disagreement" with the decision he would like reconsidered.  Anders v. FPA Corp., 164 F.R.D. 383, 387 (D.N.J. 1995).  Instead, there must be some "dispositive factual matters or controlling decisions of law" that were presented to the Court, but not considered.  United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999).  Thus, a "mere recapitulation of the cases and arguments considered by the court before rendering the original decision" does not warrant a grant of reconsideration.  S.C. v. Deptford Twp. Bd. of Educ., 248 F. Supp. 368, 381 (D.N.J. 2003).

A motion for reconsideration will likewise fail if the moving party merely raises arguments or presents evidence that could have been raised or presented before the original decision was reached.  NL Indus. Inc., 935 F. Supp. at 516.  Thus, the moving party must actually present "something new or something overlooked by the court in rendering the earlier decision."  Khair v. Campbell Soup Co., 893 F. Supp. 316, 337 (D.N.J. 1995) (citing Harsco Corp., 779 F.2d at 909).  The word "overlooked" is the operative term and has been consistently interpreted as referring only to facts and legal arguments that might reasonably have resulted in a different conclusion had they been considered.  United States v. DeLaurentis, 83 F. Supp. 2d 455, 474 n.2. (D.N.J. 2000).

    2.  Analysis of Defendant's Arguments in Support of Reconsideration

Defendant advances three arguments in support of its Motion for Reconsideration.  First, Defendant argues there was never a meeting of the parties' minds as to certain material terms and therefore no settlement agreement was actually reached.  (See Def.

Supp. Br. (Motion for Reconsideration), pp. 3-6; Def. Post Ev. Hearing Br. (Motion for Reconsideration), p. 13-16.)  Second, it claims that Mr. Etish lacked authority under the circumstances to enter into a settlement on its behalf, thereby rendering the June 5, 2006 agreement invalid.  (See Def. Supp. Br. (Motion for Reconsideration),p. 6; Def. Post Ev. Hearing Br. (Motion for Reconsideration), p. 17.)  Third, it argues that the Court should have held an evidentiary hearing on the issue of whether Plaintiff breached the purported settlement, thereby justifying rescission of any agreement that was reached.  (See Def. Br. (Motion for Reconsideration), pp. 1-2.)  Each argument will be addressed in turn and, as discussed below, each lacks merit.

*a.  The parties reached a binding settlement agreement on June 5, 2006.*

Defendant first argues that it never actually reached a settlement with Plaintiff.  More specifically, Defendant claims the differences between the terms in the parties' proposed memorializations demonstrate that they never achieved a meeting of the minds.  (See Def. Supp. Br. (Motion for Reconsideration), pp. 3-6; Def. Post Ev. Hearing Br. (Motion for Reconsideration), pp. 13-16.)   Instead, Defendant asserts that the parties merely exchanged an offer and a counteroffer, both of which were rejected.  (See Def. Supp. Br. (Motion for Reconsideration), pp. 5-6; Def. Post Ev. Hearing Br. (Motion for Reconsideration), pp. 15-16.) The Court disagrees.

It should first be noted that a settlement agreement is a form of a contract.  Mortellite v. Novartis Crop Prot., Inc., 460 F.3d 483, 492 (3d Cir. 2006) (citing Borough

6

of Haledon v. Borough of N. Haledon, 817 A.2d 965, 975 (N.J. Super. Ct. App. Div.

2003)).  Courts therefore look to general principles of local contract law to resolve

disputes over such agreements.  Id.

New Jersey has a strong public policy in favor of settlements.  Nolan v. Lee Ho,

577 A.2d 143, 146 (N.J. 1990).  Courts will therefore "strain to give effect to the terms of

a settlement wherever possible."  Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util., 503

A.2d 331, 333 (N.J. Super. Ct. App. Div. 1985).

Notwithstanding the strong policy favoring settlements, "[a] settlement stipulation

should not be enforced 'where there appears to have been an absence of mutuality of

accord between the parties or their attorneys in some substantial particulars, or the

stipulated agreement is incomplete in some of its material and essential terms.'" Bistricer

v. Bistricer, 555 A.2d 45, 47 (N.J. Super. Ct. Ch. Div. 1987) (quoting Kupper v. Barger,

111 A.2d, 73, 74-75 (N.J. Super. Ct. App. Div. 1955)).  However, as the Bistricer court

explained:

> [I]t is not necessary for a writing to contain every possible
> contractual provision to cover every contingency in order to
> qualify as a completed binding agreement.  Some of these issues
> may be determined by the operation of law, or the parties may
> resolve such differences by a subsequent agreement or a contract
> may be silent in those respects.  In any event a contract is no less
> a contract because some preferable clauses may be omitted
> either deliberately or by neglect.  *So long as the basic essentials*
> *are sufficiently definite, any gaps left by the parties should not*
> *frustrate their intention to be bound.*

Id. (emphasis added) (quoting Berg Agency v. Sleepworld, 346 A.2d 419, 423-24 (N.J.

Super. Ct. App. Div. 1975)).

Additionally, under New Jersey law, it is sufficient if the parties orally agree on the essential terms, "even though they contemplate the later execution of a formal document to memorialize their undertaking." United States v. Lightman, 988 F. Supp. 448, 459 (D.N.J. 1997). Indeed, as long as those essential terms are agreed to, "the settlement will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges." Lahue v. Pio Costa, 623 A.2d 775, 788 (N.J. Super. Ct. App. Div. 1993).

Based on these principles, it is clear that the parties in this case reached an enforceable settlement agreement on June 5, 2006. The Record clearly indicates the parties' intent to enter into a settlement:

> THE COURT: Counsel, I understand that the case has been resolved by way of settlement.
> MR. CIMINO: That is correct, your Honor.
> MR. ETISH: Correct, your Honor.
> ***
> THE COURT: Now first, Mr. McDonnell, are you satisfied with the settlement?
> MR. MCDONNELL: Yes, I am, your Honor.
> THE COURT: And are you satisfied with the representation you have received in this case?
> MR. MCDONNELL: Yes, I am.
> THE COURT (to Defendant's principal, Glenn Cummins): And also with you, sir, are you satisfied with the settlement?
> MR. CUMMINS: Yes.
> THE COURT: And you're satisfied with the representation you've received in this case?
> MR. CUMMINS: Yes.

(Settlement Tr., June 5, 2006, p. 2.)

While the Record demonstrates that the parties intended to settle the case, it obviously does not identify the terms upon which they agreed.[2]  These terms are, however, evident upon examination of the Record evidence.

In order to fully develop the facts necessary to decide this Motion, the Court held an evidentiary hearing over three days in May and June 2007.  During the course of this hearing, Mr. Cimino, Mr. Etish, and Mr. Cummins each testified.

Mr. Etish testified that on June 5, 2006, he and Mr. Cimino discussed and agreed upon three key terms for a settlement.  These terms included: 1) payment of $105,000 by Defendant to Plaintiff; 2) a clause prohibiting the parties from disparaging each other; and 3) non-disclosure of the settlement terms.  (See Settlement Hearing Tr. (Mr. Etish), May 15, 2007, 68:21-71:7.)  Mr. Etish also clearly explained that, apart from an issue pertaining to the timing of payment, no other terms were discussed that day.  (See id., 71:9-74:4, 75:17-25, 94:4-11.)  Mr. Etish's testimony on these points is entirely consistent with that of Mr. Cimino, who similarly explained that the negotiations and agreement that day involved only those three terms and the ancillary discussion about the timing of payment.  (See Settlement Hearing Tr. (Mr. Cimino), May 15, 2007, 9:24-12:22, 12:24-13:1, 22:4-14.)  Thus, both attorneys understood the settlement to contain only these three terms.

Mr. Etish additionally testified that he discussed these terms that day with Mr.

_____

[2]At their request, the Court permitted the parties to refrain from entering the details of the settlement agreement on the Record in order to preserve confidentiality of the specific terms.

Cummins.  (See Settlement Hearing Tr. (Mr. Etish), May 15, 2007, 74:6-12.)  When

asked whether Mr. Cummins then authorized settlement, Mr. Etish responded, "Mr.

Cummins at the time agreed to the amount of money, and he agreed to the terms as I had

outlined them, yes."  (Id., 74:14-18.)  Therefore, according to Mr. Etish, Mr. Cummins

understood and agreed that the proposed settlement would include only these three terms.

Mr. Cummins's testimony differed significantly.  He, like the attorneys, testified

that he understood a settlement was reached on June 5, 2006.  (See Settlement Hearing

Tr. (Mr. Cummins), May 17, 2007, 4:11-13.)  However, he claimed to believe that the

settlement consisted of five terms–the same three terms discussed above, as well as a

unilateral release of Plaintiff's claims and a non-competition clause.  (See id., 4:14-21.)

Mr. Cummins testified that he made it clear to Mr. Etish that this was his (Mr.

Cummins's) understanding of the settlement.  (See id., 11:6-12:6.)  Indeed, according to

Mr. Cummins, the two men discussed the non-competition clause, in particular,

throughout the day.  (See id., 14:10-14.)

Mr. Cummins also testified that he was later reassured in his understanding of the

settlement immediately before agreeing to it on the Record.  Specifically, Mr. Cummins

explained that he believed the settlement terms would be explicitly identified on the

Record.  (See id., 5:5-6.)  When they were not, he asked Mr. Etish whether the settlement

contained all the terms they had discussed before entering the courtroom.  (See id., 4:25-

5:8, 14:1-9.)  Mr. Etish answered in the affirmative, which Mr. Cummins took to mean

the settlement contained all five terms.  (See id., 5:8-9, 14:7.)

Mr. Cummins's version of events is almost entirely at odds with Mr. Etish's testimony.  Specifically, Mr. Etish was certain that he never represented to Mr. Cummins that a non-competition clause was part of the settlement.[3]  (See Settlement Hearing Tr. (Mr. Etish), May 15, 2007 80:23-81:10; Settlement Hearing Tr. (Mr. Etish), June 5, 2007, 6:24-7:3, 17:14-17.)  Likewise, Mr. Etish had no recollection of Mr. Cummins inquiring on June 5, 2006 about whether the settlement contained a non-competition clause.  (See Settlement Hearing Transcript (Mr. Etish), June 5, 2007, 13:10-13, 14:18-22.)  Thus, when Mr. Etish told Mr. Cummins that the settlement included all the terms they had discussed before entering the courtroom, Mr. Etish understood this to refer only to the three terms he explained to Mr. Cummins after having reached the agreement with Mr. Cimino.  (See Settlement Hearing Tr. (Mr. Etish), June 5, 2007, 11:6-12:5.)

The distinctions between Mr. Etish and Mr. Cummins's testimony also extend to events occurring after June 5, 2006.  It appears that Mr. Cummins and Mr. Etish spoke by

---

[3]During a bit of an elaboration, Mr. Etish also explained that settlement negotiations in this case always contemplated two separate scenarios, one in which a non-competition clause would be included in the agreement and one in which it would not.  (See Settlement Hearing Tr. (Mr. Etish), June 5, 2007, 7:3-7.)  When Mr. Etish and Mr. Cimino discussed the dollar amounts, there was a substantial difference between the two scenarios.  Indeed, the amount discussed for a settlement with a non-competition clause was in the $500,000 range. (See id., 7:7-10, 12:16-18, 22:25-23:4.)  By contrast, the discussions for a settlement without a covenant not to compete revolved around the $200,000 to $350,000 range.  (See id., 7:10-12, 12:14-16.)  Moreover, Mr. Etish testified that the proposed dollar amounts were always communicated to Mr. Cummins. (See id., 9:14-15.)  Thus, Mr. Etish believed that when he and Mr. Cummins discussed settling for $105,000, both men understood the proposal not to contain a non-competition clause.  (See id., 7:12-15, 12:13-18.)

telephone sometime prior to October 6, 2006.  (See Settlement Hearing Tr. (Mr. Etish),
June, 5, 2007, 15:23-16:3; Settlement Hearing Tr. (Mr. Cummins), May 17, 2007,
5:13-23.)  There was some discussion during this conversation about the status of a
non-competition clause in the settlement.  (See Settlement Hearing Tr. (Mr. Etish), June
5, 2007, 16:5-7; Settlement Hearing Tr. (Mr. Cummins), May 17, 2007, 5:18-21.)  In
response to this discussion, Mr. Etish wrote Mr. Cummins a letter in which he clearly
explained that the settlement did not feature such a term.[4]  (See Pl. Br. as to Settlement
Issues (Motion for Entry of Judgment and for Civil Contempt), Exh. G.)  Moreover, Mr.
Etish indicated that neither he nor Mr. Diaz previously advised Mr. Cummins to the
contrary.  (Id.)

Shortly thereafter, Mr. Cummins again spoke with Mr. Etish.  Mr. Cummins
testified that, during this conversation, he indicated his belief that the statements in the
Mr. Etish's October 6, 2006 letter were false.  (See Settlement Hearing Tr. (Mr.
Cummins), May 17, 2007, 10:2-18.)  In contrast, however, Mr. Etish testified that Mr.
Cummins never said anything of the sort during this conversation.  (See Settlement
Hearing Tr. (Mr. Etish), June, 5, 2007, 14:3-8, 16:17-17:7.)

_____

[4]This assertion is consistent with the fact that the July 18, 2006 proposed memorialization
that Mr. Etish drafted nowhere mentioned a covenant not to compete.  (See Pl. Supp. Br. (Motion
for Entry of Judgment and for Civil Contempt), Exh. C.)  Moreover, in a letter to Mr. Cimino
dated October 6, 2006, Mr. Diaz identified the need to "revise" the settlement to add a non-
competition clause.  (See Pl. Br. as to Settlement Issues (Motion for Entry of Judgment and for
Civil Contempt), Exh. H.)  Ostensibly, if either defense counsel understood the settlement to
already contain such a term, there would be no reason to revise the agreement to add one.

12

Obviously, Mr. Etish and Mr. Cummins's versions of events differ sharply from one another.  The Court, however, has the advantage of having observed their testimony first hand.  The Court took careful note of both men's demeanor while testifying and has accordingly evaluated their credibility.  Based on these observations, the Court finds Mr. Etish to be a credible witness while it concludes that Mr. Cummins is not credible.

Mr. Etish's testimony was clear and consistent, both internally and with Mr. Cimino's testimony.  It was likewise consistent with Mr. Etish's own actions following June 5, 2006.  Moreover, Mr. Etish is a capable attorney.  As such, the Court doubts he would have represented to Mr. Cummins that the settlement contained a non-competition clause when this was clearly not a term he and Mr. Cimino discussed, or to which they agreed, on June 5, 2006.

By contrast, Mr. Cummins's demeanor while testifying was that of a person who lacked certainty regarding his version of events.  Moreover, he was, at times, evasive in response to questioning.  This obviously casts doubt on the reliability of his testimony.

Additionally, Mr. Cummins is a sophisticated businessman.  He undoubtedly enters into complex agreements all the time.  The Court therefore strongly doubts he would have believed this settlement, for this dollar amount, to contain a covenant not to compete given the settlement history of this case.[5]

Based on the testimony and other Record evidence, the Court believes Mr. Etish

---

[5]See supra footnote 3.

13

and Mr. Cimino discussed and reached agreement with respect to three essential terms: 1) the payment of $105,000 by Defendant to Plaintiff; 2) non-disparagement between the parties; and 3) non-disclosure of settlement terms.  Moreover, the Court believes Mr. Etish conveyed this proposal to Mr. Cummins, who also agreed.  Thus, the parties entered into a binding settlement agreement premised on these three terms.

Defendant nonetheless claims that there was never a meeting of the parties' minds sufficient to create a binding settlement agreement.  It directs the Court to the Third Circuit's unpublished opinion in United States v. Lauckner, 101 F. App'x 870 (3d Cir. 2004).  In that case, a taxpayer and the Internal Revenue Service ("IRS") exchanged correspondence regarding the possibility of resolving via settlement the taxpayer's liability for allegedly failing to pay federal employment taxes.  Id. at 871.  The taxpayer's counsel sent several letters to the IRS outlining the terms of the taxpayer's settlement offer.  Id. at 871-72.  The IRS eventually responded with a letter in which it purported to accept the taxpayer's offer "with the understanding that each side will bear its own costs, including any attorney's fees."  Id. at 872.  The taxpayer's offer had never mentioned responsibility for costs or fees.  See id.

When the IRS attempted to enforce the agreement, the taxpayer argued that he had never agreed to the added term.  Nonetheless, the district court ordered the agreement to be enforced.  Id.  On appeal, the Third Circuit reversed because the IRS's acceptance violated the mirror image rule.  Id. (citing Step-Saver Data Sys., Inc. v. Wyse Tech., 939

14

F.2d 91, 99 (3d Cir. 1991)).   The court noted that "'[a] variation on the substance of the offered terms is material, even though the variation is slight . . . .'" Id. (quoting JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 3.32, at 478-80 (1993)).  Thus, the IRS had rejected the taxpayer's offer and instead conveyed a counteroffer.  Id. 872-73.

Defendant argues that Lauckner requires the Court to vacate its January 16, 2007 Order to Enforce the Settlement. (See Def. Post Ev. Hearing Br. (Motion for Reconsideration), p. 15.)  In particular, Defendant analogizes the IRS's purported acceptance in Lauckner to Plaintiff's August 2, 2006 proposed memorialization; that is, Defendant argues that Plaintiff's memorialization, like the IRS's letter, contained several terms that are at variance with the writing to which it responded.  For this reason, Defendant concludes that Plaintiff's memorialization similarly constituted a rejection and counteroffer, rather than an acceptance of Defendant's proposed settlement terms.  (See id.)  This argument, however, ignores a critical distinction between the exchanged writings in Lauckner and those in this case.

In Lauckner, exchanged writings contained the taxpayer's offer of settlement and the IRS's purported acceptance, which violated the mirror image rule.  Thus, parties never reached an agreement because the offer and acceptance were at variance with one another.  Here, by contrast, the exchanged writings had nothing to do with offer and acceptance.  The parties had already passed that stage of contract formation when, on June 5, 2006, they mutually agreed to settle this case on the three essential terms

discussed above.  Instead, the exchanged writings merely constituted proposed

memorializations of that agreement.  While the writings contain some varying terms,[6]

these differences have no effect on whether there was a valid offer and acceptance of the

three terms on June 5, 2006.

Moreover, the fact that the parties have been unable to agree on the differing terms

contained in their proposed memorializations does not necessarily have any bearing on

the overall validity of their settlement.  Again, New Jersey law will enforce a settlement

so long as the parties mutually agree on the *essential terms*.  See Bistricer, 555 A.2d at 47.

Thus, in Bistricer, the court enforced a settlement entered into on the record despite the

plaintiffs' subsequent objection to several items in the defendants' proposed settlement

stipulation.  See id. at 46.  The plaintiffs claimed that their assent on the record was

limited to a mere "framework of a settlement," rather than a binding agreement.  Id. at 48.

They added that the actual settlement would be consummated only upon their execution

of a written agreement.  See id. at 46.  Because the defendants' proposed stipulation

contained terms to which they objected, the plaintiffs refused to sign it and thus

concluded they were not bound by their agreement on the record.  See id.  The court,

however, noted that the plaintiffs' objections pertained either to new terms they now

sought for the first time or to matters affecting only the agreement's implementation.  Id.

at 48.  As such, they were not essentials of the settlement.  Id.

---

[6]See supra footnote 1.

Other cases have similarly rejected the argument that a settlement should not be enforced because the parties were unable to subsequently agree on all the details in a stipulation or memorialization.  See, e.g., Hagrish v. Olson, 603 A.2d 108, 109-10 (N.J. Super. Ct. App. Div. 1992) (enforcing a settlement that required the defendants to pay a stated sum of money and barred the plaintiffs from pursuing an appeal, even though the parties could not subsequently agree on whether a release should be unilateral or mutual).

Just as in Bistricer and Hagrish, the parties in the instant matter reached an agreement on the essential terms of their settlement.  The fact that their proposed memorializations vary considerably with one another in no way disturbs the validity of that agreement.  The disputed terms–concerning the scope of the release, ensuring payment, tax treatment, indemnification, and the scope of confidentiality–all speak to the settlement's implementation.  They are not, however, essentials of the settlement.  The Court therefore will not reconsider its January 16 Order on this basis.

*b.  Defendant's counsel had authority to settle this case.*

Defendant next argues that its counsel, Mr. Etish, lacked authority to settle this case.  (See Def. Supp. Br. (Motion for Reconsideration), p. 6; Def. Post Ev. Hearing Br. (Motion for Reconsideration), pp. 11-12, 17.)  More specifically, Defendant asserts that it always intended any settlement into which it entered to feature a covenant not to compete. (See Def. Supp. Br. (Motion for Reconsideration), p. 6.)  To the extent that the June 5, 2006 settlement did not contain such a term, Defendant argues that Mr. Etish lacked

17

authority to enter into it.  (See Def. Post Ev. Hearing Br. (Motion for Reconsideration), p.

11, 17.)  The Court disagrees.

Under New Jersey law, settlement stipulations made by attorneys when acting

within the scope of their authority are enforceable against their clients.  Jennings v. Reed,

885 A.2d 482, 490 (N.J. Super. Ct. App. Div. 2005).  Further, an attorney is presumed to

possess authority to act on behalf of the client.  Id.  Indeed, a party who asserts the lack of

authority must sustain "a heavy burden to establish that [the] attorney acted without *any*

*kind of authority . . . .*"  Id. (emphasis added) (quoting Sur. Ins. Co. of Cal. v. Williams,

729 F.2d 581, 583 (8th Cir.1984)).

When discussing the authority of an agent to act on behalf of a principal, a

distinction must be drawn between actual and apparent authority.  Actual authority,

whether express or implied, refers to "'written or spoken words or other conduct of the

principal which, reasonably interpreted, causes the agent to believe that the principal

desires him to act on the principal's account.'"  Id. (quoting Restatement (Second) of

Agency § 26 (1958)).  On the other hand, "'apparent authority . . . is created as to a *third*

*person* by written or spoken words or any other conduct of the principal which,

reasonably interpreted, causes the *third person* to believe that the principal consents to

have the act done on his behalf by the person purporting to act for him.'"  Id. (emphasis

added) (quoting Restatement (Second) of Agency § 27).  In other words, "'[a]pparent

authority imposes liability, not as the result of an actual contractual relationship, but

18


because of actions by a principal which have misled a third party into believing that a

relationship of authority does, in fact, exist.'" Id. (quoting Wilzig v. Sisselman, 506 A.2d

1238, 1244 (N.J. Super. Ct. App. Div. 1986).

       In the specific context of private litigation, apparent authority exists "where the

client by words or conduct communicated to the adverse attorney, engenders a reasonable

belief that the attorney possesses authority to conclude a settlement . . . ." Amatuzzo v.

Kozmiuk, 703 A.2d 9, 12 (N.J. Super. Ct. App. Div. 1997).  This is true even where the

client subsequently denies having granted the attorney authority to settle.  See Seacoast

Realty Co. v. W. Long Branch Borough, 14 N.J. Tax 197, 204-05 (N.J. Tax Ct. 1994).

       In this case, it appears that Mr. Etish acted under both actual and apparent

authority to settle according to the three terms discussed in section II(A)(2)(a), supra.  As

to actual authority, Mr. Etish testified that, on June 5, 2006, he discussed with Mr.

Cummins the prospect of settling the case on three terms: 1) payment of $105,000 to

Plaintiff by Defendant; 2) a non-disparagement clause; and 3) confidentiality of

settlement terms.  (See Settlement Hearing Tr. (Mr. Etish), May 15, 2007, 74:6-12.)

Moreover, Mr. Etish was certain that he never represented that the proposed settlement

featured a non-competition clause.  (See id., 80:23-81:10; Settlement Hearing Tr. (Mr.

Etish), June 5, 2007, 6:24-7:3, 17:14-17.)   Finally, Mr. Etish explained that Mr.

Cummins agreed to those three terms as per their discussion.  (See Settlement Hearing Tr.

(Mr. Etish), May 15, 2007, 74:14-18.)  This agreement can be interpreted in only one

way–an express grant of authority to settle the matter based on the identified terms.

Of course, Mr. Cummins testified that he and Mr. Etish *did* discuss the covenant not to compete and that he believed the settlement contained this term.  (See Settlement Hearing Tr. (Mr. Cummins), May 17, 2007, 11:6-12:6, 14:10-14.)  However, as discussed in section II(A)(2)(a), supra, the Court finds Mr. Cummins to not be a credible witness. On the other hand, Mr. Etish was highly credible on this point.  Thus, based on the Record evidence, the Court concludes that Mr. Etish possessed actual authority to settle this case on behalf of Defendant notwithstanding the fact that the agreement did not contain a non-competition clause.

It is equally clear that Mr. Cummins's words and actions on June 5, 2006 cloaked Mr. Etish with apparent authority to settle the case.  Negotiations that day took place primarily outside the courtroom, with the parties stationing themselves on opposite ends of a hallway.  (See Settlement Hearing Tr. (Mr. Cimino), May 15, 2007, 7:24-8:24.) During this occasion, Mr. Cimino observed Mr. Cummins and Mr. Etish discussing settlement terms.  (See id., 63:5-10.)  According to Mr. Cimino, it was clear that Mr. Cummins was actively engaged in this discussion and that he gave Mr. Etish instructions on how to proceed with the negotiations.  (See id., 14:18-15:5, 63:14-64:12.)

A short while later, Mr. Cummins appeared before the Court along with Mr. Etish, Mr. Diaz, Plaintiff, and Mr. Cimino.  The Court then inquired as to whether the parties were satisfied with the settlement they had reached.  (See Settlement Tr., June 5, 2006, p.

2.)  In response, Mr. Cummins clearly indicated his satisfaction, (see id.,) of which Mr.

Cimino took note, (see Settlement Hearing Tr. (Mr. Cimino), May 15, 2007, 16:19-17:2).

Thus, it reasonably appeared to Mr. Cimino that Mr. Cummins had, indeed, authorized

Mr. Etish to enter into a settlement on the three terms the attorneys discussed that day.

Mr. Etish therefore acted under apparent authority.  Accordingly, the Court declines to

reconsider its January 16, 2007 Order on this basis.

c.  An evidentiary hearing on Defendant's rescission argument was unwarranted.

Defendant also argues that any settlement agreement that may have existed on June

5, 2006 should be rescinded because Plaintiff allegedly violated its provisions relating to

confidentiality and non-disparagement.  More to the point, it claims that reconsideration

is justified because the Court did not conduct a formal evidentiary hearing on this issue

before granting Plaintiff's Motion to Enforce the Settlement on January 17, 2007.  (See

Def. Br. (Motion for Reconsideration), pp. 1-2.)  This argument lacks merit.

Again, New Jersey law views a settlement agreement as a contract like any other.

See Mortellite, 460 F.3d at 492 (citing Borough of Haledon, 817 A.2d at 975).  Thus,

when a party breaches a material term of a settlement agreement, the non-breaching party

is relieved of its obligation to perform thereunder.  Nolan, 577 A.2d at 146.

With these basic principles in mind, Defendant draws the Court's attention to

Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra,

983 F.2d 495 (3d Cir. 1992).  The specific facts of that case are irrelevant to the instant

matter.  Instead, it suffices to understand that one party argued for rescission of a settlement after the other party allegedly breach it.  See id. at 500.  The district court had determined that the rescission argument could be resolved in the first instance by an arbitrator.  Id. at 506.  However, the Third Circuit reversed and remanded because the federal statute under which the district court acted did not, in fact, authorize arbitration on the rescission issue.  Id.  In reaching its decision, the court of appeals noted that it "remand[ed] this dispute for *full development of the facts* and a decision on the merits." Id. (emphasis added).

Defendant seemingly reads the quoted language from Centra to mean that an evidentiary hearing is necessarily required where one party argues that it may rescind a settlement because of the other party's alleged breach.  Based on this premise, Defendant concludes that reconsideration is warranted in this case because the Court did not afford Defendant a formal evidentiary hearing before deciding Plaintiff's Motion to Enforce the Settlement.  The Court disagrees given the recent history of this case.

Defendant first raised the rescission argument in its brief opposing Plaintiff's Motion to Enforce the Settlement.  (See Def. Br. (Opposing Pl. Motion to Enforce Settlement), pp. 5-6.)  On October 31, 2006, the Court held a hearing at which it made clear that Defendant must present sworn testimony relating to Plaintiff's alleged breaches of the settlement.  (See Settlement Hearing Tr., Oct. 31, 2006, 3:5-4:5, 4:13-14.)  Two and a half months later, on January 16, 2007, the Court held a follow-up telephone

22

conference.  Defendant failed, at that time, to identify any witnesses who could testify

regarding Plaintiff's alleged breaches.[7]  (See generally Tele. Conf. Tr., Jan. 16, 2007.)

Simply put, when the Court ordered the settlement to be enforced, it believed that

two and a half months was more than ample time in which to locate and identify

witnesses.  Thus, the Court declined to hold an evidentiary hearing for one reason and one

reason only–the lack of any witnesses whose testimony would be offered at such a

hearing.  Without witnesses, there simply were no facts to develop.  The Court therefore

declines to reconsider its January 16, 2007 Order on this ground.

### B.  Plaintiff's Motion for Entry of Judgment and for Civil Contempt

The Court also has before it Plaintiff's Motion for Entry of Judgment and for Civil

Contempt.  In support of his Motion, Plaintiff argues that Defendant, by failing to remit

settlement proceeds to Plaintiff, is not only violating the settlement, but is also flouting

the Court's January 16, 2007 Order.  (See Pl. Br. (Motion for Entry of Judgment and Civil

---

[7]Defendant suggested that its inability to identify witnesses was due to a delay in receiving the June 5, 2006 transcript in which the parties manifested agreement to the settlement. (See Tele. Conf. Tr., Jan. 16, 2007, 3:7-16.)  However, this assertion defies reason.

Everyone involved in this case agrees that the settlement contained both non-disparagement and non-disclosure clauses.  (See Settlement Hearing Tr. (Mr. Etish), May 15, 2007, 69:2-71:7; Settlement Hearing Tr. (Mr. Cimino), May 15, 2007, 9:24-12:22; Settlement Hearing Tr. (Mr. Cummins), May 17, 2007, 4:14-21.)  Moreover, Defendant apparently alerted its counsel to Plaintiff's alleged breaches of these provisions sometime in early October 2006. (See Def. Br. (Opposing Motion to Enforce Settlement), p. 3.)  Ostensibly, Defendant learned of these alleged breaches from some identifiable source, i.e., witnesses.  Thus, it is difficult to understand why defense counsel needed to first review a sparse settlement transcript before he could identify witnesses who, in all probability, had informed Defendant of the alleged breaches in the first place.

Contempt), p. 3.)  Thus, Plaintiff not only concludes that judgment should be entered against Defendant for the full amount of the settlement, but also that Defendant should be held in civil contempt.[8]  (See id., p. 4.)  While the Court believes civil contempt is not warranted under these circumstances, it agrees with Plaintiff that judgment should be entered.

A party may be held in civil contempt for failing to comply with a court order if: (1) a valid court order existed; (2) it required the party to do certain things; (3) the party knew of the order; and (4) the party disobeyed the order.  N.J. Sports Prod., Inc. v. Don King Prod., Inc., 15 F. Supp. 2d 546, 551 (D.N.J. 1998) (citing Harris v. City of Philadelphia, 47 F.3d 1311, 1326 (3d Cir. 1995); Roe v. Operation Rescue, 919 F.2d 857, 871 (3d Cir. 1990)).  A court will enter a civil contempt order only after the party seeking it demonstrates satisfaction of these elements by clear and convincing evidence.  See id. Where there is ground to doubt the wrongfulness of the conduct, the party against whom contempt is sought should not be adjudged in contempt.  See id.  Moreover, at least one court has implied that civil contempt is not appropriate where a party timely files a motion for reconsideration of the order it is alleged to have violated.  See Barcia v. Sitkin, No. 79-5831, 2007 U.S. Dist. LEXIS 7419, at *16 (S.D.N.Y. Jan. 25, 2007) (explaining that

---

[8]Plaintiff additionally requests the Court to permit him to submit an application for attorney's fees in the event the Court holds Defendant in civil contempt.  (See Pl. Br. (Motion for Entry of Judgment and Civil Contempt), pp. 3-4.)  However, as the Court declines to find Defendant in civil contempt, it similarly declines to permit Plaintiff to submit such an application.

because the defendants neither sought a stay of the court's order, nor timely filed a motion for reconsideration, civil contempt was appropriate).

In this case, the Court does not believe that civil contempt is warranted against Defendant. It is true that Defendant has not yet complied with the Court's January 16, 2007 Order. However, it must be remembered that Defendant timely filed its Motion for Reconsideration of that Order on January 30, 2007. Under these circumstances, the Court doubts the alleged wrongfulness of Defendant's conduct. As such, the Court declines to hold Defendant in civil contempt.

Nonetheless, the Court understands Plaintiff's frustration with this case. The parties reached a settlement on June 5, 2006. Fifteen months later, Plaintiff has still not received the proceeds to which he is entitled under that settlement. Having now denied Defendant's Motion for Reconsideration, the Court sees no reason for continued delay. Thus, the Court will enter judgment in favor of Plaintiff in the amount of $105,000.

### III.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Reconsideration will be denied. Plaintiff's Motion for Entry of Judgment and for Civil Contempt will be granted in part and denied in part. An appropriate Order will be entered with this Opinion.


/S/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
Dated: September 24, 2007          United States District Judge

25